Christian Contreras, Esq. (SBN 330269)
CC@Contreras-Law.com
**LAW OFFICES OF CHRISTIAN CONTRERAS**
**A PROFESSIONAL LAW CORPORATION**
360 E. 2nd St., 8th Floor
Los Angeles, California 90012
Tel: (323) 435-8000; Fax: (323) 597-0101

Attorneys for Plaintiff,
CLAUDIA CORUGEDO

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

CLAUDIA CORUGEDO, an individual,

Plaintiff,

v.

LOS ANGELES POLICE DEPARTMENT, a public entity; CITY OF LOS ANGELES, a public entity; VICTOR SOLORIO, an individual; and DOES 1 to 10, individuals,

Defendants.

**CASE NO.: 2:26-cv-6555**

**COMPLAINT FOR DAMAGES**

1. Excessive Force in Violation of the Fourth Amendment (42 USC § 1983);
2. Municipal Liability – *Monell* (42 USC § 1983);
3. Negligence;
4. Battery by Peace Officer
5. Violation of California Civil Code §51.7 (Ralph Act);
6. Violation of California Civil Code § 52.1 (Tom Bane Act);

**DEMAND FOR JURY TRIAL**

**INTRODUCTION**

1. This is a civil rights action seeking monetary damages against Defendants LOS ANGELES POLICE DEPARTMENT ("LAPD"), CITY OF LOS ANGELES, and DOES 1 through 10, stemming from an excessive use of force shooting wherein Defendants VICTOR SOLORIO and DOES 1 through 10 shot CLAUDIA CORUGEDO two (2) times on May 26, 2025 on what began as a wellness check call.

2. On May 26, 2025, Defendants VICTOR SOLORIO and DOES 1 through 10 responded to a 911 call from an unknown caller reporting that CLAUDIA CORUGEDO's van appeared to have been seriously damaged. Indeed, the caller was unaware if anyone was even in the van. CLAUDIA CORUGEDO clearly informed officers that she was suffering a mental health crisis. Instead of offering help, upon arrival, Defendants VICTOR SOLORIO and DOES 1 through 10 failed to de-escalate the crisis and instead exacerbated it in a number of ways including by Defendants VICTOR SOLORIO and DOES 1 through 10 attempting to arrest and beginning a pursuit of CLAUDIA CORUGEDO.

3. When Defendants VICTOR SOLORIO and DOES 1 through 10 shot CLAUDIA CORUGEDO, she was not a threat to VICTORIO SOLORIO or DOES 1 through 10, nor anyone else in any manner whatsoever. CLAUDIA CORUGEDO was suffering a mental health crisis, expressing her suicidality, and needed help. Clearly, CLAUDIA CORUGEDO was not an imminent threat of death or serious bodily injury. Therefore, the use of force by Defendants VICTOR SOLORIO and DOES 1 through 10 was clearly excessive and unreasonable in violation of CLAUDIA CORUGEDO's constitutional rights.

4. In using such unreasonable and excessive force, Defendants VICTOR SOLORIO and DOES 1 through 10 violated CLAUDIA CORUGEDO constitutional rights including her Fourth Amendment rights under the United States Constitution.

///

///

5. CLAUDIA CORUGEDO has experienced severe emotional distress and serious bodily injury leading to lifelong disabilities based upon the extreme and outrageous conduct of Defendants VICTOR SOLORIO and DOES 1 through 10.

6. Accordingly, this Complaint seeks judicial redress and monetary damages for such constitutional violations.

## JURISDICTION AND VENUE

7. This case is properly heard in United States District Court under federal question jurisdiction, pursuant 28 U.S.C. § 1331, as it is a civil suit which presents questions arising exclusively under federal law.

8. Venue is proper within the Central District of California pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all Defendants reside within this district and the events and omissions giving rise to Plaintiff's claims occurred within this district.

9. Plaintiff presented her government claims on November 17, 2025. On December 17, 2025, Defendant CITY rejected Plaintiff’s tort claim. As such, Plaintiff has complied with the California Tort Claims Act requirements with respect to her claims arising under state law.

10. With respect to these supplemental state claims, Plaintiff request that this Court exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over such claims as they arise from the same facts and circumstances which underlie the federal claims.

## PARTIES

11. Plaintiff CLAUDIA CORUGEDO is and was, at all times relevant hereto, a resident of the County of Los Angeles, California. Plaintiff CLAUDIA CORUGEDO brings her claims individually on the basis of 42 U.S.C §§ 1983 and 1988, the United States Constitution, federal and state civil rights law and California law. Plaintiff CLAUDIA CORUGEDO also brings these claims as a Private Attorney General, to vindicate not only her rights, but others’ civil rights of great importance.

///

///

12. Defendant LOS ANGELES POLICE DEPARTMENT is a public entity with the capacity to sue and be sued.[1] At all times relevant to the facts alleged herein, Defendant LOS ANGELES POLICE DEPARTMENT was responsible for law enforcement services in the City of Los Angeles.

13. Defendant CITY OF LOS ANGELES is a public entity with the capacity to sue and be sued. At all times relevant to the facts alleged herein, Defendant CITY OF LOS ANGELES was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its employees complied with the laws and the Constitutions of the United States and of the State of California.

14. Defendant VICTOR SOLORIO (serial number 42671) is and was an individual employed as an LAPD officer acting under color of law at all relevant times.

15. Defendants DOES 1 through 10 are unnamed because their identities have yet to be ascertained. Each was an employee of LAPD acting under color of law at all relevant times. Each was involved in some manner with the violations of Plaintiff's rights as alleged herein.

16. Each of the defendants caused, and is responsible for, the unlawful conduct and resulting injuries suffered by Plaintiff by, among other things, personally participating in the unlawful conduct, acting jointly, or conspiring with others who did so; by ordering, authorizing, acquiescing in, or setting in motion policies, plans, or actions that led to the unlawful conduct, by failing to take action to prevent the unlawful conduct; by failing and refusing to initiate and maintain adequate training and supervision; by failing to enact policies to address the constitutional rights of protesters despite the obvious need for such a policy; and by ratifying the unlawful conduct that

---

[1] The Ninth Circuit has held that California law permits § 1983 claims against municipal police departments. *See Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 n. 2 (9th Cir. 1988) ("Municipal police departments are 'public entities' under California law and, hence, can be sued in federal court for alleged civil rights violations.).

occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action.

17. Plaintiff is informed and believes and thereupon alleges that each of the Defendants was, at all material times, an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiff is further informed and believes and thereupon alleges that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged. At all material times, each Defendant was jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of Plaintiff CLAUDIA CORUGEDO's constitutional rights and other harm.

18. Plaintiff is informed and believes and thereupon alleges that at all times relevant hereto, Defendants, and each of them, acted as the agents, servants, and employees of each of the other defendants.

19. In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted within the course and scope of their employment.

20. In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or under the color of law.

## FACTUAL ALLEGATIONS

21. On or about May 26, 2025, CLAUDIA CORUGEDO was experiencing a mental health crisis due to series of bad personal circumstances. CLAUDIA CORUGEDO had found herself unexpectedly homeless after her ex-partner ended their relationship, and CLAUDIA CORUGEDO also experienced domestic violence when her ex used a baseball bat to smash the windshield of the van she was then living in. CLAUDIA CORUGEDO was also deeply affected by the death of her father, who she was very close to. To make matters worse, CLAUDIA CORUGEDO was also

estranged from her twin sister due to CLAUDIA CORUGEDO's worsening ongoing mental health issues. CLAUDIA CORUGEDO found herself isolated without support, struggling to handle the end of her relationship, the death of her father, and the split between herself and her sister.

22. CLAUDIA CORUGEDO was peacefully parked in a residential area when a resident placed a 911 call due to concerns that CLAUDIA CORUGEDO's vehicle appeared to have been "shot at"–the holes left in the windshield by CLAUDIA CORUGEDO's ex smashing the windshield with a baseball bat. There were no reports that CLAUDIA CORUGEDO was dangerous or threatening anyone. The caller's request was, verbatim, that "You guys might want to check it out because it looks really weird".

23. The 911 call was intended as a wellness check, not as a criminal report, least of all when CLAUDIA CORUGEDO had done nothing illegal.

24. Around 7:00 a.m., LOS ANGELES POLICE DEPARTMENT officers VICTOR SOLORIO (42671) and DOES 1 through 10 were dispatched to address this call and arrived at CLAUDIA CORUGEDO's van.

25. Upon information and belief, this incident was not the first run-in CLAUDIA CORUGEDO had with LAPD due to her mental health challenges and suicidality. LAPD should have known that CLAUDIA CORUGEDO was mentally ill and required special assistance.

26. LOS ANGELES POLICE DEPARTMENT officers DOES 1 through 10 initially began talking to CLAUDIA CORUGEDO about her mental health and safety concerns. CLAUDIA CORUGEDO explained the facts of her personal situation, and expressed a fear that she may have a warrant for her arrest and being afraid of going to jail in her current mental state.

27. Instead of de-escalating the situation, calling for the Mental Evaluation Team or using less than lethal force options, Defendants DOES 1 through 10 approached CLAUDIA CORUGEDO in such a manner which escalated the situation.

Indeed, DOE 1 then stated that CLAUDIA CORUGEDO had a warrant and attempted to arrest her. Defendant DOE 1 began handling CLAUDIA CORUGEDO aggressively, causing her to panic.

28. CLAUDIA CORUGEDO, still suffering a mental health crisis and afraid, ran back to her van and drove away.

29. DOES 1 through 10 then pursued CLAUDIA CORUGEDO. Instead of calling for a Mental Evaluation Team for backup, DOES 1 through 10 summoned a Special Weapons and Tactics team.

30. Summoning a Special Weapons and Tactics team led to a two-hour-long confrontation wherein CLAUDIA CORUGEDO's van was cornered in a cul de sac and CLAUDIA CORUGEDO was unable to escape.

31. Still very obviously struggling with a mental health crisis that was severely exacerbated by DOES 1 through 10's actions, CLAUDIA CORUGEDO climbed on top of her van, holding a BB gun to her own neck.

32. Instead of de-escalating the situation, calling for the Mental Evaluation Team or using less than lethal force options, Defendants VICTOR SOLORIO and DOES 1 through 10 approached CLAUDIA CORUGEDO in such a manner which escalated the situation. Indeed, Defendants VICTOR SOLORIO and DOES 1 through 10 approached CLAUDIA CORUGEDO aggressively with firearms drawn. At all times, CLAUDIA CORUGEDO was sitting on the top of her van with a BB gun pointed at her neck in a desperate plea for help—a plea that could have been resolved safely if DOES 1 through 10 had summoned a Mental Evaluation Team instead of a Special Weapons and Tactics team.

33. As Defendants VICTOR SOLORIO and DOES 1 through 10 continued to escalate the situation, Defendants VICTOR SOLORIO and DOES 1 through 10 drew and exhibited their firearms towards CLAUDIA CORUGEDO.

34. As Defendants DOES 1 through 10 continued to threaten CLAUDIA CORUGEDO with their firearms, CLAUDIA CORUGEDO retreated from the top of

her van and began to back away with her BB gun and a machete. CLAUDIA CORUGEDO was not brandishing either item against anyone and was simply walking away slowly. As CLAUDIA CORUGEDO backed away, she was even less of a threat and was retreating from the attack by Defendants VICTOR SOLORIO and DOES 1 through 10.

35. DOES 1 through 10 and VICTOR SOLORIO followed CLAUDIA CORUGEDO with weapons drawn. CLAUDIA CORUGEDO was standing on a residential walkway when she was shot. CLAUDIA CORUGEDO wanted help, not to be shot.

36. Instead, around 10:30 A.M., VICTOR SOLORIO shot CLAUDIA CORUGEDO two (2) times as she was cornered on a residential porch. One (1) bullet was shot into CLAUDIA CORUGEDO's stomach. Far more egregiously, one (1) bullet was fired into CLAUDIA CORUGEDO's back as she fell, exploding into her spine.

37. CLAUDIA CORUGEDO was not a threat to Defendants VICTOR SOLORIO and DOES 1 through 10 nor anyone else in any manner whatsoever. Indeed, CLAUDIA CORUGEDO was clearly not an imminent threat of death or serious bodily injury to anyone given that CLAUDIA CORUGEDO had not threatened anyone. CLAUDIA CORUGEDO did not at any time point the BB gun at anyone other than herself in the two-hour long confrontation and did not brandish the machete at anyone in the two-hour long confrontation. Therefore, the use of deadly force by Defendants DOES 1 through 10 was clearly excessive and unreasonable in violation of CLAUDIA CORUGEDO's constitutional rights.

38. Despite knowing that CLAUDIA CORUGEDO had suffered multiple serious personal tragedies including domestic violence at the hands of her ex-partner, estrangement from her twin sister, and the recent death of her father to whom she was close, and that CLAUDIA CORUGEDO was acutely suicidal, Defendants VICTOR SOLORIO and DOES 1 through 10 decided to engage in extreme and outrageous

conduct by shooting and almost killing CLAUDIA CORUGEDO who was unarmed and not a threat.

39. As a result of being shot in the stomach and spine, CLAUDIA CORUGEDO was left in a coma for approximately two (2) days as a result of being shot. CLAUDIA CORUGEDO was left with permanent spinal damage and was removed from physical therapy by LAPD before she could relearn how to walk. CLAUDIA CORUGEDO now requires permanent catheterization and a colostomy bag due to serious damage to her bladder and colon.

40. Such a traumatic event has caused CLAUDIA CORUGEDO to suffer severe emotional distress and serious physical injuries causing permanent disability.

## <u>FIRST CLAIM FOR RELIEF</u>

**Fourth Amendment Violation—Excessive Force (42 USC § 1983)**

**By Plaintiff CLAUDIA CORUGEDO**

**Against Defendants VICTOR SOLORIO and DOES 1 through 10**

41. Plaintiff realleges and incorporates by reference each of the forgoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

42. The Fourth Amendment to the Constitution provides in part, "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated . . ." U.S. Const. amend. IV. Under the Fourth Amendment, a police officer may use only such force as is "objectively reasonable" under all of the circumstances. *See Graham v. Connor,* 490 U.S. 386, 397 (1989).

43. At all relevant times, Defendants VICTOR SOLORIO and DOES 1 through 10 were acting under color of law.

44. On May 26, 2025, Defendants VICTOR SOLORIO and DOES 1 through 10 used deadly force on CLAUDIA CORUGEDO. When Defendants VICTOR SOLORIO and DOES 1 through 10 used deadly force on CLAUDIA CORUGEDO, CLAUDIA CORUGEDO was not an imminent threat of death or serious bodily injury. In fact, when CLAUDIA CORUGEDO was shot, CLAUDIA CORUGEDO was not a

threat in any form, even against herself. CLAUDIA CORUGEDO’s threats of self harm was non-actionable, given that she was holding a BB gun and not an actual firearm, and CLAUDIA CORUGEDO did not brandish the machete against herself or anyone else. Clearly, Defendants VICTOR SOLORIO and DOES 1 through 10's use of deadly force was not objectively reasonable under the circumstances.

45. Therefore, Defendants VICTOR SOLORIO and DOES 1 through 10 violated CLAUDIA CORUGEDO’s Fourth Amendment rights because when she used deadly force on CLAUDIA CORUGEDO, CLAUDIA CORUGEDO was not an imminent threat of death or serious bodily injury against anyone.

46. Accordingly, under the totality of the circumstances, Defendants VICTOR SOLORIO and DOES 1 through 10's use of deadly force on CLAUDIA CORUGEDO was not objectively reasonable and was in violation of CLAUDIA CORUGEDO’s Fourth Amendment rights.

47. As a direct and proximate result of Defendants VICTOR SOLORIO and DOES 1 through 10's acts and/or omissions as set forth above, CLAUDIA CORUGEDO sustained injuries and damages.

48. As a direct and proximate result of Defendants VICTOR SOLORIO and DOES 1 through 10's conduct, the civil rights of CLAUDIA CORUGEDO, as protected by the Fourth Amendment of the United States Constitution were violated. Further, CLAUDIA CORUGEDO experienced physical pain, severe emotional distress, mental anguish, and permanent disabilities, as well as other damages alleged herein. Accordingly, Plaintiff is entitled to pain and suffering damages.

49. Defendants VICTOR SOLORIO and DOES 1 through 10 subjected CLAUDIA CORUGEDO to their wrongful conduct, depriving CLAUDIA CORUGEDO of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of CLAUDIA CORUGEDO and others would be violated by their acts and/or omissions. The conduct of Defendants entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983

and as provided by law. Plaintiff does not seek punitive damages against the public entity Defendants.

50. Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

**SECOND CLAIM FOR RELIEF**

**Municipal Liability – *Monell* (42 U.S.C. § 1983)**

**By Plaintiff CLAUDIA CORUGEDO**

**Against Defendants LOS ANGELES POLICE DEPARTMENT and CITY OF LOS ANGELES**

51. Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

52. Pursuant to *Monell v. Department of Social Servs.*, municipalities are "persons" under § 1983 and thus could be held liable for causing a constitutional deprivation. 436 U.S. 658, 690 (1978). The Supreme Court explained that while a municipality may not be held liable under § 1983 for the torts of its employees on a theory of *respondent superior*, liability may attach where the municipality itself causes the constitutional violation through the execution of an official policy, practice or custom. *Id*. at 690–691.

53. Furthermore, "the inadequacy of police training may serve as the basis for § 1983 liability only when the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Flores v. County of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

54. As set forth in the forgoing causes of action, Defendants VICTOR SOLORIO and DOES 1 through 10 committed clear and well-established violations of constitutional rights against Plaintiff. within the course and scope of their employment as LAPD officers, under color of law.

///

55. On and for some time prior to May 26, 2025 (and continuing to the present date), Defendants CITY, LAPD, VICTOR SOLORIO and DOES 1 through 10, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of Plaintiff, and of persons in her class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy, and practice of:

a. Allowing LAPD officers, including Defendants herein, to use force on individuals such as CLAUDIA CORUGEDO;

b. Allowing LAPD officers, including Defendants herein, to use deadly force on individuals such as CLAUDIA CORUGEDO who posed no threat of harm to human life;

c. Allowing LAPD officers, including Defendants herein, to deny medical care to individuals such as CLAUDIA CORUGEDO, including by forcing her physical therapy to be ended prematurely;

d. Allowing LAPD officers to wield their authority to detain and/or arrest civilians such as CLAUDIA CORUGEDO arbitrarily and capriciously;

e. Employing and retaining LAPD officers and other personnel, including VICTOR SOLORIO and DOES 1 through 10, whom the Defendants CITY and LAPD knew or reasonably should have discovered to have a high propensity for abusing their authority, mistreating civilians, and failing to follow established agency policies respecting the rights of the public and interactions with civilians;

f. Inadequately hiring, training, supervising, assigning, retaining, and disciplining LAPD employees, including VICTOR SOLORIO and DOES 1 through 10, whom the Defendants CITY and LAPD knew or reasonably should have known to be perpetrators of unlawful and/or unconstitutional conduct, allowing such misconduct to go partially or totally unaddressed;

g. Maintaining grossly inadequate procedures for reporting, investigating,

overseeing, disciplining, and correcting intentional misconduct by LAPD employees, including VICTOR SOLORIO and DOES 1 through 10;

h. Consistently ratifying the intentional misconduct of LAPD employees in public statements and/or subsequent internal "investigations," including by wrongly claiming CLAUDIA CORUGEDO had a warrant for her arrest so as to justify her shooting, thereby cultivating a sense of official impunity within the LAPD encouraging of misconduct;

i. Encouraging, accommodating, or facilitating a "code of silence" among LAPD employees, including VICTOR SOLORIO and DOES 1 through 10, pursuant to which false reports are generated and abuses of power are routinely covered up;

j. Transferring, moving, and/or relocating problem officers to other stations, divisions, positions, and/or to other local municipal agencies altogether, to essentially "bury," ignore, dilute, hide, spread, etc., these problem actors, along with their incidents of misconduct, evading internal, disciplinary, and other investigations in the process;

k. Allowing law enforcement personnel to encourage, intimidate, and compel others to "work in gray," or maintain a "code of silence" or "blue code," regarding unconstitutional abuses in order to insulate law enforcement from accountability, attract and recruit problematic individuals to law enforcement, and improperly or expeditiously promote problem actors into positions of authority within law enforcement, among various other abuses of power and breaches of duty not expressly specified herein.

56. The expressly adopted policies and/or widespread, well-known, and longstanding customs or practices set forth above, constitute standard operating procedures within the Defendants CITY and LAPD, which have directly precipitated the pervasive use of unreasonable and/or excessive force against innocent members of

the public, suspects, arrestees, detainees, prisoners, and the general public at an unignorable and unacceptable scale, not least of which resemble the egregious constitutional violations suffered by Plaintiff.

57. Furthermore, Defendants LAPD and CITY clearly also had an unconstitutional training policy such that it failed to train its officers including VICTOR SOLORIO and DOES 1 through 10.

58. In terms of widespread, well-known, and longstanding customs or practices set forth above, such policies, customs and practices were of significant duration, frequency and extent such that they were standard operating procedure for Defendants LAPD and CITY. A practice or custom can be established by repeated constitutional violations that were not properly investigated and for which the violators were not disciplined, reprimanded or punished.

59. Defendants CITY and LAPD, and individual supervisory officials thereof, whether named or unnamed, had either actual or constructive knowledge of the unconstitutional policies, practices, and/or customs set forth herein. Despite this knowledge, the Defendants CITY and LAPD, by and through officials with final policymaking authority, did condone, tolerate, and ratify such policies, customs, and practices, and have shown deliberate indifference to the foreseeable effects and consequences of these policies, customs, and practices with respect to the civil rights and wellbeing of the present Plaintiff, other individuals similarly situated, and the general public.

60. Accordingly, the policies, practices, and/or customs implemented, maintained, or still tolerated by Defendants CITY and LAPD, or final policymakers thereof, are so inextricably connected to the unconstitutional conduct that Plaintiff have endured as to be a substantial moving force behind it. Clearly, Defendants CITY's and LAPD's unconstitutional customs and practices were the moving force which caused Plaintiff's injuries. Therefore, Defendants CITY and LAPD must be regarded as similarly liable for all claims raised herein against its employees, agents, and/or

representatives under 42 U.S.C. § 1983.

61. Plaintiff by this action, further claim all of Plaintiff's attorneys' fees and costs incurred and to be incurred in Plaintiff presenting, maintaining and prosecuting this action under 42 U.S.C. Section 1988.

**THIRD CLAIM FOR RELIEF**

**Negligence**

**By Plaintiff CLAUDIA CORUGEDO**

**Against Defendants CITY OF LOS ANGELES, VICTOR SOLORIO, and DOES 1 through 10**

62. Plaintiff realleges and incorporates by reference each of the forgoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

63. The present cause of action is brought pursuant to Cal. Gov. Code §§ 815.2 and 820. Under § 820, as a public employee, the individual Defendants VICTOR SOLORIO and DOES 1 through 10, is liable for injuries caused by their acts or omissions to the same extent as a private person. Under § 815.2, the defendant public entity, CITY OF LOS ANGELES, are vicariously liable for injuries caused by the acts or omissions of its employees, officers, and agents, committed within the course and scope of that employment, including Defendants VICTOR SOLORIO and DOES 1 through 10. This cause of action is not alleging direct liability against Defendant CITY OF LOS ANGELES, only vicarious liability. *See* Cal. Gov. Code § 815.2(a-b); *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.

64. Plaintiff claims that Defendants VICTOR SOLORIO and DOES 1 through 10 were negligent when they used deadly force on CLAUDIA CORUGEDO.

65. Defendants VICTOR SOLORIO and DOES 1 through 10 owed CLAUDIA CORUGEDO a duty of care.

66. Such duty of care owed to CLAUDIA CORUGEDO required Defendants VICTOR SOLORIO and DOES 1 through 10 to exercise reasonable care in the use of deadly force and reasonable care in the use of pre-shooting tactics. Indeed, such duty

of care required Defendants VICTOR SOLORIO and DOES 1 through 10 to refrain from the use of deadly force unless objectively necessary to defend human life, to use reasonable tactics and to use reasonable decision-making ahead of each such resort to deadly force. *See* Cal. Pen. Code § 835a; *Hayes v. County of San Diego* (2013) 57 Cal. 4th 622, 628–29.

67. Defendants VICTOR SOLORIO and DOES 1 through 10 breached one or more of such duties owed to CLAUDIA CORUGEDO by resorting to deadly force unnecessarily, using unreasonable pre-shooting tactics and negligent decision-making, when they shot and seriously injured CLAUDIA CORUGEDO.

68. Moreover, Defendants VICTOR SOLORIO and DOES 1 through 10 did not make reasonable efforts to warn of deadly force or deescalate the situation prior to the use of deadly force.

69. Indeed, Defendants VICTOR SOLORIO and DOES 1 through 10 further breached their duty of care because the use of deadly force on CLAUDIA CORUGEDO was not necessary to defend human life given that CLAUDIA CORUGEDO was not a threat. Indeed, CLAUDIA CORUGEDO did not have the present opportunity, ability, nor apparent intent to constitute an imminent threat of death or serious bodily injury. CLAUDIA CORUGEDO's threats against her own self were prompted and caused directly by VICTOR SOLORIO and DOES 1 through 10's conduct.

70. Each such breach of duty of care was a substantial factor in causing harm to CLAUDIA CORUGEDO because the unreasonable pre-shooting tactics, decisions, non-interventions, and ultimate resort to deadly force directly contributed thereto, CLAUDIA CORUGEDO harm.

71. Due to the injuries caused by Defendants VICTOR SOLORIO and DOES 1 through 10, CLAUDIA CORUGEDO suffered severe physical, mental, and emotional anguish including her serious bodily harm and permanent disability and such damages are recoverable by her.

72. Accordingly, the Plaintiff is entitled to recover punitive damages and compensatory damages.

## FOURTH CLAIM FOR RELIEF

**Battery by Peace Officer**

**By Plaintiff CLAUDIA CORUGEDO**

**Against Defendants CITY OF LOS ANGELES, VICTOR SOLORIO, and DOES 1 through 10**

73. Plaintiff realleges and incorporates by reference each of the forgoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

74. The present cause of action is brought pursuant to Cal. Gov. Code §§ 815.2 and 820. Under § 820, as a public employee, the individual Defendants VICTOR SOLORIO and DOES 1 through 10, is liable for injuries caused by their acts or omissions to the same extent as a private person. Under § 815.2, the defendant public entity, CITY OF LOS ANGELES, are vicariously liable for injuries caused by the acts or omissions of its employees, officers, and agents, committed within the course and scope of that employment, including Defendants VICTOR SOLORIO and DOES 1 through 10. This cause of action is not alleging direct liability against Defendants CITY OF LOS ANGELES, only vicarious liability. *See* Cal. Gov. Code § 815.2 (a-b); *Zelig v. County of Los Angeles* (2002) 27 Cal. 4th 1112, 1128.

75. Defendants VICTOR SOLORIO and DOES 1 through 10 intentionally made physical contact with Plaintiff CLAUDIA CORUGEDO's person by shooting her with deadly fire.

76. Furthermore, as previously set forth, the deadly force used by Defendants VICTOR SOLORIO and DOES 1 through 10 was not necessary to defend human life under California law because CLAUDIA CORUGEDO was not a threat of death or serious bodily injury to Defendants VICTOR SOLORIO and DOES 1 through 10 nor anyone else. CLAUDIA CORUGEDO's threats against her own self were prompted and caused directly by VICTOR SOLORIO and DOES 1 through 10's conduct.

77. Indeed, Defendants VICTOR SOLORIO and DOES 1 through 10 further committed a battery because the use of deadly force on CLAUDIA CORUGEDO was not necessary to defend human life given that CLAUDIA CORUGEDO was not a threat in any form. Indeed, CLAUDIA CORUGEDO did not have the present opportunity, ability, nor apparent intent to constitute an imminent threat of death or serious bodily injury.

78. The actions and omissions of Defendants VICTOR SOLORIO and DOES 1 through 10 were a substantial factor in causing CLAUDIA CORUGEDO harm because the deadly force used by Defendants VICTOR SOLORIO and DOES 1 through 10 caused CLAUDIA CORUGEDO's substantial bodily harm.

79. Therefore, as a direct and proximate result of Defendants VICTOR SOLORIO and DOES 1 through 10's conduct, CLAUDIA CORUGEDO suffered injuries causing her severe mental, physical, and emotional distress and anguish from which she would ultimately sustain serious injuries and for which she is entitled to compensation.

80. Furthermore, as set forth herein, Defendants VICTOR SOLORIO and DOES 1 through 10 acted with willful and conscious disregard for the rights and wellbeing of CLAUDIA CORUGEDO, thereby subjecting her to cruel and unjust hardship. Accordingly, the actions and omissions of Defendants VICTOR SOLORIO and DOES 1 through 10 were malicious and oppressive under the meaning of Cal. Civ. Code § 3294, entitling Plaintiff to recover punitive as well as compensatory damages in order to deter future misconduct by the example of Defendants' punishment.

81. Accordingly, the Plaintiff, CLAUDIA CORUGEDO is entitled to recover punitive damages and compensatory damages for the severe physical, mental, and emotional anguish CLAUDIA CORUGEDO experienced in the moments leading up to and including her serious bodily harm due to the wrongful conduct of Defendants VICTOR SOLORIO and DOES 1 through 10.

///

**<u>FIFTH CLAIM FOR RELIEF</u>**

**Violation of the Ralph Civil Rights Act**

**(Cal. Civ. Code § 51.7)**

**By Plaintiff CLAUDIA CORUGEDO**

**Against Defendants CITY OF LOS ANGELES, VICTOR SOLORIO, and DOES 1 through 10**

82. Plaintiff realleges and incorporates by reference each of the forgoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

83. The present cause of action is brought pursuant to Cal. Gov. Code §§ 815.2, 820 and Civ. Code § 51. 7. Under § 820, as a public employee, the individual Defendants VICTOR SOLORIO and DOES 1 through 10, is liable for injuries caused by their acts or omissions to the same extent as a private person. Under § 815.2, the defendant public entity, CITY OF LOS ANGELES, are vicariously liable for injuries caused by the acts or omissions of its employees, officers, and agents, committed within the course and scope of that employment, including Defendants VICTOR SOLORIO and DOES 1 through 10. This cause of action is not alleging direct liability against Defendants CITY OF LOS ANGELES, only vicarious liability. *See* Cal. Gov. Code § 815.2 (a-b); *Zelig v. County of Los Angeles* (2002) 27 Cal. 4th 1112, 1128.

84. California Civil Code § 51.7 authorizes a private right of action for damages to any person subjected to violence based on their perceived race, color, national origin, etc. Importantly, "[N]othing in the statute requires that a plaintiff prove that the offending act was motivated by hate." *Ventura v. ABM Industries Inc.* (2012) 212 Cal. App. 4th 258.

85. Upon information and belief, Defendants VICTOR SOLORIO and DOES 1 through 10 used deadly force on account of CLAUDIA CORUGEDO's perceived protected characteristic of mental health condition. The use of deadly force constituted violence and Defendants VICTOR SOLORIO and DOES 1 through 10's substantial motivating reason to use deadly force on CLAUDIA CORUGEDO was due to

CLAUDIA CORUGEDO's protected characteristic.

86. Indeed, rather than investigating the situation any further, Defendants VICTOR SOLORIO and DOES 1 through 10 decided to arrest CLAUDIA CORUGEDO, pursue CLAUDIA CORUGEDO, and use violence including gunfire against CLAUDIA CORUGEDO due to seeing her as less deserving of respect or even human life on account of her protected characteristic. CLAUDIA CORUGEDO was experiencing a mental health crisis and needed help, not arrest, pursuit, or violence.

87. Due to the fact of CLAUDIA CORUGEDO's appearance of mental unwellness and disheveledness on account of living in her van, what should and could have been recognized as circumstances requiring the help of a mental health support team instead triggered an unnecessary arrest, pursuit, and shooting by Defendants VICTOR SOLORIO and DOES 1 through 10.

88. As a direct result of Defendants VICTOR SOLORIO and DOES 1 through 10's decision to arrest CLAUDIA CORUGEDO, pursue CLAUDIA CORUGEDO, and use deadly force against CLAUDIA CORUGEDO, Defendants VICTOR SOLORIO and DOES 1 through 10 needlessly subjected CLAUDIA CORUGEDO to extensive civil rights violations and caused her severe physical, psychological, emotional pain and suffering, and lasting physical disabilities, for which she is entitled to recover compensatory damages.

89. Furthermore, as set forth herein, Defendants VICTOR SOLORIO and DOES 1 through 10 acted with willful and conscious disregard for the rights and wellbeing of CLAUDIA CORUGEDO, thereby subjecting her to cruel and unjust hardship. Accordingly, the actions and omissions of Defendants VICTOR SOLORIO and DOES 1 through 10 were malicious and oppressive under the meaning of Cal. Civ. Code § 3294, entitling Plaintiff to recover punitive as well as compensatory damages in order to deter future misconduct by the example of Defendants' punishment.

90. Accordingly, the Plaintiff, CLAUDIA CORUGEDO is entitled to recover punitive damages and compensatory damages for the severe physical, mental, and

emotional anguish CLAUDIA CORUGEDO experienced in the moments leading up to and including her serious bodily harm and permanent disability due to the wrongful conduct of Defendants VICTOR SOLORIO and DOES 1 through 10.

91. Finally, Plaintiff is also entitled to a multiplier of damages, a civil penalty of $25,000 and the reasonable value of attorneys' fees and costs, as authorized under Cal. Civ. Code § 52.

## SIXTH CLAIM FOR RELIEF

**Violation of the Tom Bane Civil Rights Act**

**(Cal. Civ. Code § 52.1)**

**By Plaintiff CLAUDIA CORUGEDO**

**Against Defendants CITY OF LOS ANGELES, VICTOR SOLORIO, and DOES 1 through 10**

92. Plaintiff realleges and incorporates by reference each of the forgoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

93. The present cause of action is brought pursuant to Cal. Gov. Code §§ 815.2 and 820 as well as Cal. Civ. Code § 52.1. Under § 820, as a public employee, Defendants VICTOR SOLORIO and DOES 1 through 10, is liable for injuries caused by their acts or omissions to the same extent as a private person. Under § 815.2, the defendant public entity, CITY OF LOS ANGELES, are vicariously liable for injuries caused by the acts or omissions of its employees, officers, and agents, committed within the course and scope of that employment, including Defendants VICTOR SOLORIO and DOES 1 through 10. This cause of action is not alleging direct liability against Defendant CITY OF LOS ANGELES, only vicarious liability. *See* Cal. Gov. Code § 815.2 (a-b); *Zelig v. County of Los Angeles* (2002) 27 Cal. 4th 1112, 1128.

94. Additionally, Cal. Civ. Code § 52.1(b) authorizes a private right of action for damages by any person whose constitutional rights are violated by use of threats, intimidation, or coercion. Importantly, Section 52.1 serves as an analogous state-law basis for bringing excessive/unreasonable force claims as that provided under the

Fourth Amendment to the United States Constitution. *See Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105–6 (9th Cir. 2014) (citing *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir.2013) ("[T]he elements of the excessive force claim under § 52.1 are the same as under § 1983.")); *Bender v. Cnty. of L.A.*, 217 Cal. App. 4th 968, 976 (2013) ("an unlawful [seizure]—when accompanied by unnecessary, deliberate, and excessive force—is [] within the protection of the Bane Act").

95. As previously set forth, Defendants VICTOR SOLORIO and DOES 1 through 10, intentionally used unnecessary, unreasonable, and deadly force against CLAUDIA CORUGEDO, thereby interfering with CLAUDIA CORUGEDO's exercise and enjoyment of her civil rights under the laws and Constitutions of the United States and California, including but not limited to the rights to be free from unreasonable seizure and excessive force (U.S. Const. amend. IV; and Cal. Const. Art. I § 13), the right to due process (U.S. Const. amend. XIV; and Cal. Const. Art. I § 7(a)), and the right to protection from undue restraint and/or harm to life, liberty, and property (Cal. Const. Art. I § 1).

96. From the moment Defendants VICTOR SOLORIO and DOES 1 through 10 first confronted CLAUDIA CORUGEDO, Defendants VICTOR SOLORIO and DOES 1 through 10 exhibited baseless hostility and a determined contempt for the life and wellbeing of CLAUDIA CORUGEDO. Defendants VICTOR SOLORIO and DOES 1 through 10's lack of reverence for the value of CLAUDIA CORUGEDO's life shows that Defendants VICTOR SOLORIO and DOES 1 through 10 specifically intended to violate CLAUDIA CORUGEDO's rights.

97. The threats, intimidation, and coercion employed by Defendants VICTOR SOLORIO and DOES 1 through 10 in shooting CLAUDIA CORUGEDO without any consideration or prior resort to less-than-lethal alternatives in their possession, while deadly force otherwise remained unnecessary and unreasonable, reflects a clear and specific intent of Defendants VICTOR SOLORIO and DOES 1 through 10 to deprive CLAUDIA CORUGEDO of the aforementioned rights and liberties, and/or a reckless

disregard for substantial risks of violations thereof.

98. Clearly, Defendants VICTOR SOLORIO and DOES 1 through 10 acted with the specific intent to interfere, or attempt to interfere, with CLAUDIA CORUGEDO's right to be free from unreasonable seizures through threats, intimidation, and coercion.

99. The actions and omissions of Defendants VICTOR SOLORIO and DOES 1 through 10 were a substantial factor in causing CLAUDIA CORUGEDO's substantial harm, as, but for the shooting of CLAUDIA CORUGEDO, CLAUDIA CORUGEDO's substantial bodily harm could have been prevented.

100. Therefore, as a direct and proximate result of Defendants VICTOR SOLORIO and DOES 1 through 10's conduct, CLAUDIA CORUGEDO suffered injuries causing her severe mental, physical, and emotional distress and anguish from which she would ultimately suffer great bodily harm, and for which she is entitled to compensation.

101. Furthermore, as set forth herein, Defendants VICTOR SOLORIO and DOES 1 through 10 acted with willful and conscious disregard for the rights and wellbeing of CLAUDIA CORUGEDO, thereby subjecting her to cruel and unjust hardship. Accordingly, the actions and omissions of Defendants VICTOR SOLORIO and DOES 1 through 10 were malicious and oppressive under the meaning of Cal. Civ. Code § 3294, entitling Plaintiff to recover punitive as well as compensatory damages in order to deter future misconduct by the example of Defendants' punishment.

102. Finally, Plaintiff is also entitled to a multiplier of damages, a civil penalty of $25,000 and the reasonable value of attorneys' fees and costs, as authorized under Cal. Civ. Code § 52.

///

///

///

///

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests entry of judgment in her favor and against Defendants as follows:

A. General Damages in excess of the mandatory amount for jurisdiction in the Unlimited Superior Court;

B. Non-Economic Damages in excess of the mandatory amount for jurisdiction in the Unlimited Superior Court;

C. Special damages including damages for medical bills;

D. Punitive damages as to individual peace officer defendants;

E. Attorney's fees pursuant to State Law (CCP § 1021.5 & private attorney general doctrine);

F. Penalties under the Bane Act and Ralph Act;

G. A multiplier of damages including treble damages pursuant to Civil Section 52;

H. Interest;

I. All other remedies awarded by the Court;

J. All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988; and as otherwise may be allowed by California and/or federal law.

**Dated: June 17, 2026**

**LAW OFFICES OF CHRISTIAN CONTRERAS**
**A PROFESSIONAL LAW CORPORATION**

By: ______________________
CHRISTIAN CONTRERAS, Esq.
Attorney for Plaintiff,
CLAUDIA CORUGEDO, et al.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demand a trial by jury on all claims for relief alleged herein.

**Dated: June 17, 2026**

**LAW OFFICES OF CHRISTIAN CONTRERAS**
**A PROFESSIONAL LAW CORPORATION**

By: ______________________
CHRISTIAN CONTRERAS, Esq.
Attorney for Plaintiff,
CLAUDIA CORUGEDO, et al.